J-A01001-17

2017 PA Super 155

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| ROBERT LOUIS DENNIS | |
| Appellant | No. 1935 WDA 2015 |

Appeal from the Judgment of Sentence November 10, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0008413-2015

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

OPINION BY BOWES, J.:                    **FILED MAY 22, 2017**

Appellant appeals from the judgment of sentence of ninety days house arrest and eighteen months probation following his guilty plea for driving under the influence ("DUI") and driving without a license.  He raises statutory and constitutional challenges to the trial court's pre-sentencing revocation of bond for purposes of completing an alcohol assessment.  We condemn the imprisonment of Appellant for his inability to pay for that assessment upfront.  We are, however, constrained to affirm judgment of sentence, as Appellant received time credit for this period of incarceration.

On April 30, 2015, Appellant was arrested for operating a motor vehicle while under the influence of alcohol.  His breath test revealed a blood alcohol content of .268%.  Appellant, who had a prior DUI conviction, was

_____

* Retired Senior Judge assigned to the Superior Court.

charged with two counts of DUI and the summary offense of driving without a license.

On September 23, 2015, Appellant pleaded guilty to one count of DUI, graded as a misdemeanor of the first degree, and the summary offense. Sentencing was scheduled for October 27, 2015. In the interim, Appellant was ordered to undergo a Court Reporting Network ("CRN") assessment plus a separate drug and alcohol assessment.

Appellant appeared for sentencing in compliance with the CRN requirement. However, he informed the court that he was unable to complete the second assessment since he could not afford a $100 payment required upfront by the assessor. Appellant repeated his willingness to complete the requirement and suggested that the court either waive the assessment or order the provider to complete the assessment without payment of the fee, with repayment to follow as part of court costs.

The trial court refused to waive the requirement and stated that the assessment could not be added to court costs. The judge then informed Appellant that the fee must be collected upfront, due to "a pretty strict policy, I think uniform throughout the criminal division." N.T. 10/27/15, at 4. The judge then stated, "Why doesn't [Appellant] come up with a hundred bucks in a week or so, give him a break instead of sending him to jail. I

mean that's the alternative." *Id*. at 4-5.[1]  Appellant stated, "I don't have [the money], sir, I just rather do my time and get it over with, sir." *Id*. at 5.  The trial court thereafter revoked Appellant's bond and remanded him to the Allegheny County Jail, with sentencing to follow "[a]s soon as that assessment is completed[.]".  *Id*. at 6.  The assessment was completed on November 9, 2015.  Appellant remained incarcerated from October 27, 2015, through November 10, 2015.

On November 9, 2015, Appellant filed a motion asking the trial court to certify the order for interlocutory appeal.  On November 10, 2015, the trial court denied the motion and imposed the aforementioned sentence, with time credit for the fifteen-day period of incarceration.

Appellant filed a timely notice of appeal, and complied with the order to file a concise statement of matters complained of on appeal.  The trial court filed an opinion in response and the matter is ready for our review. Appellant raises the following issue:

> When [Appellant] entered a guilty plea to DUI but was financially unable to pay the preliminary fee for taking the mandatory, pre-sentence drug and alcohol assessment pursuant to 75 Pa.C.S. § 3814, whether the trial court's decision to incarcerate him so that the assessment could be performed in the Allegheny County Jail violated 75 Pa.C.S. § 3815(f)(2), as well as [Appellant]'s

---

[1]  The parties indicated that the assessments completed at the Allegheny County Jail do not require upfront payment, and the fee is added to court costs.

federal and state constitutional rights to equal protection and due process of law?

Appellant's brief at 5.

Initially, we must address whether this appeal should be dismissed as moot, as urged by the Commonwealth, since Appellant's sole claim on appeal challenges the fifteen days he remained incarcerated for purposes of completing the assessment. Since Appellant was released long ago and received credit for that time as applied to his house arrest sentence, the Commonwealth maintains that there is no relief to give.

"As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot." *In re D.A.,* 801 A.2d 614, 616 (Pa.Super. 2002) (quoting *In re Duran*, 769 A.2d 497 (Pa.Super. 2001)). However, this Court will decide questions that have otherwise been rendered moot when, *inter alia*, "the question presented is capable of repetition and apt to elude appellate review." *Commonwealth v. Nava*, 966 A.2d 630, 633 (Pa.Super. 2009) (citation omitted). Since Appellant maintains that Allegheny County requires the $100 fee in all cases, an assertion that is corroborated by the trial court, we find that this issue is likely to reoccur and apt to elude our review. Thus, we decline to dismiss the appeal as moot.

We now turn to Appellant's claim, that his fifteen-day incarceration violated the statutory scheme and the United States Constitution. At issue is

the propriety of the trial court's application of statutory provisions governing the administration of drug and alcohol assessments prior to imposing a DUI sentence. Matters of statutory interpretation present questions of law, and our standard of review is *de novo*. ***Commonwealth v. Johnson***, 125 A.3d 822 (Pa.Super. 2015). We conclude that the trial court lacked statutory authority to commit Appellant to jail for nonpayment and therefore do not reach Appellant's constitutional claims. ***See Commonwealth v. Ludwig***, 874 A.2d 623, 628 (Pa. 2005) ("[C]ourts have the duty to avoid constitutional difficulties, if possible, by construing statutes in a constitutional manner.").

Since this claim concerns the interplay of several statutes, we briefly review the role of an alcohol and/or drug assessment as a component of a DUI sentence. Sections 3814 and 3816 of the Vehicle Code mandate assessments in the following circumstances. First, § 3816, the aforementioned CRN provision, requires an assessment for every individual convicted of a DUI:

> **(a) Evaluation using Court Reporting Network.--**In addition to any other requirements of the court, every person convicted of a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) . . . shall, prior to sentencing . . . be evaluated using Court Reporting Network instruments issued by the department and any other additional evaluation techniques deemed appropriate by the court to determine the extent of the person's involvement with alcohol or controlled substances and to assist the court in determining what sentenc[e] . . . would benefit the person or the public.

75 Pa.C.S. § 3816. Wholly apart from this CRN evaluation, § 3814 mandates a full assessment in the following circumstances:

> (2) The defendant shall be subject to a full assessment for alcohol and drug addiction if any of the following subparagraphs apply:
>
> > (i) The defendant, within ten years prior to the offense for which sentence is being imposed, has been sentenced for an offense under:
> >
> > > (A) section 3802;
> > > (B) former section 3731; or
> > > (C) an equivalent offense in another jurisdiction.
> >
> > (ii) Either:
> >
> > > (A) the evaluation under [CRN] indicates there is a need for counseling or treatment; or
> > >
> > > (B) the defendant's blood alcohol content at the time of the offense was at least .16%.
> >
> . . . .

75 Pa.C.S. § 3814. Appellant was subject to a full assessment due to his blood alcohol content exceeding .16% as well as his prior conviction. In *Commonwealth v. Taylor*, 104 A.3d 479 (Pa. 2014), our Supreme Court held that these assessments are not discretionary and the county is obligated to ensure the availability of such assessments.

The trial court is required to utilize these assessments in fashioning a sentence. First, the penalties provisions set forth at 75 Pa.C.S. § 3804 specify that any individual convicted of a DUI offense must "comply with all

drug and alcohol treatment requirements imposed under sections 3814 and 3815." *See* 75 Pa.C.S. § 3804(a)-(c).  Additionally, a separate provision, entitled "Mandatory Sentencing" specifically states that, where a term of imprisonment is imposed, the offender must conform to the assessment recommendations.  75 Pa.C.S. § 3815.  Sentencing cannot occur until the assessments are completed.  *See Commonwealth v. Taylor*, 104 A.3d 479, 491 (Pa. 2014) (describing the assessment procedure as demonstrating legislative intent that the sentencing court utilize the assessment as a sentencing aid in creating a sentence for the benefit of the offender and the public.).

The sole issue on appeal is whether the trial court violated this scheme when it revoked Appellant's bond and remanded him to county jail due to the failure to pay the $100 charge, which Appellant attributed to his indigency.

Preliminarily, we address the trial court's position, adopted by the Commonwealth herein, that Appellant waived any claim respecting this action as he requested to be incarcerated.  We quote the pertinent portion of the October 27, 2015 transcript:

> [APPELLANT'S COUNSEL]:  Your Honor, my concern is this.  Mr. Dennis is willing to do the assessment.  It's a financial matter. He doesn't have the one hundred dollars that's required that day. I understand the alternative to get the assessment would be to go to jail but I also don't think that it's fair or his fault he needs to sit in jail just to have the assessment.  I would ask the court to consider either waiving the assessment –

THE COURT: I can't waive it.

[APPELLANT'S COUNSEL]: I understand that. But the purpose of the statute and case law that supports it was so that the assessment can be done so that the sentencing judge would have an understanding of what the background is that caused that incident. This is already a negotiated plea, we don't need – we are not using the assessment to sentence him. So he is already going to accept the offer that was recommended by the Commonwealth, or alternatively **if he can do the assessment and have a court order to have the fee for it to be assessed – to put to his court costs so he doesn't have to pay up front.**

The reason he is unable to pay right now is he is just not working. He plans on getting employment and at that time he will be able to pay.

. . . .

**THE COURT: I don't think the assessment can be added into the court costs.**

[APPELLANT'S COUNSEL]: If it's done in jail then that fee is tacked on at the end of the court costs and he doesn't have to pay up front.

THE COURT: We are not going to get into that policy because the flood gates would open, nobody would have money to pay the assessment fee or people would take it – see it that way because it's very hard often times to collect court costs.

But the assessment has to be done up front and has to be paid up front. That's been a pretty strict policy, I think uniform throughout the criminal division.

. . . .

Why doesn't he come up with a hundred bucks in a week or so, give him a break instead of sending him to jail. I mean that's the alternative.

[APPELLANT]:  I would rather go ahead and do my time.

[APPELLANT'S COUNSEL]:  I mean he's not going to be able to come up with the money.  Instead of wasting the court's time he will go to jail and have them do the assessment there.

. . . .

THE COURT:  You want to go to jail for a week over a hundred bucks?

[APPELLANT]:  I don't have it, sir, I just rather do my time and get it over with, sir.

N.T., 10/27/15, at 2-5 (emphases added).  The trial court characterizes Appellant's interjection as waiving any claim respecting the period of imprisonment.  We disagree.  The emphasized portions show that the trial court rejected any alternative other than Appellant paying the fee upfront within one week.

We now address Appellant's statutory argument.  He highlights that 75 Pa.C.S. § 3815, the aforementioned Mandatory Sentencing provision, required the trial court to impose assessment fees consistent with an offender's ability to pay.  The statute states, in pertinent part:

**(c) Treatment.--**
(1)  Treatment must conform to assessment recommendations made under section 3814.
. . . .

**(e) Follow-up.--**After an offender has completed the treatment program under subsection (c), the parole officer shall take reasonable steps to ensure that the offender does not abuse alcohol, use illegal controlled substances or abuse prescription drugs, over-the-counter drugs or any other such substances.

These reasonable steps include requiring chemical testing and periodic reassessment of the offender by the treatment program.

**(f) Fees.—**

(1) Except as set forth in paragraph (2), the parole authority shall impose upon an offender subject to this section reasonable fees to cover the cost of any of the following:

(i) Chemical testing of the offender required under this section.

(ii) An assessment of the offender required under this section.

(iii) Drug or alcohol treatment provided in accordance with the assessment.

(2) If the parole authority finds the offender to be unable to pay the full amount of the fees required by paragraph (1) and section 1541(d) (relating to period of disqualification, revocation or suspension of operating privilege), it shall require the offender to pay as much of the fee as is consistent with the offender's ability to pay and shall direct the assigned parole officer to establish a reasonable payment schedule for the offender to pay as much of the remaining fees as is consistent with the offender's ability to pay.

. . . .

75 Pa.C.S. § 3815.

We find that this statute is not directly on point, insofar as it speaks to the trial court acting in its parole capacity and therefore applies post-

sentencing.[2] Moreover, § 3815(f) immediately follows subsection (e), which discusses follow-up treatment conducted after the offender has completed the required treatment program. Additionally, § 3815(f)(1) references payment for chemical testing and assessments required under **this** section, meaning § 3815, which includes fees imposed as part of any follow-up treatments. The pre-trial assessment at issue herein is not required under this section, but rather § 3814. Thus, in context, the repayment of fees under § 3815(f) is directed only towards costs that are incurred after sentencing. Accordingly, the statute is inapplicable with respect to payment of fees incurred **prior** to sentencing.

Nevertheless, we find that Appellant's argument is forceful in this regard: the statute clearly contemplates that the payment of assessment fees, while borne by the defendant, must be imposed in a manner consistent with the offender's ability to pay. There is little logical reason not to extend the same protections to a defendant who has yet to be sentenced, especially when, as Appellant highlights, serious constitutional problems arise when a criminal defendant is incarcerated due to indigency.[3]

---

[2]  The Commonwealth similarly observes that this statute "seemingly does not contemplate offenders paying pre-sentencing fees upfront, like that at issue herein." Commonwealth's brief at 12.

[3]  Cases discussing indigency often arise in the context of access to some feature of the criminal justice system. Thus, in **Roberts v. LaVallee**, 389
*(Footnote Continued Next Page)*

Instantly, neither of the parties raises the issue of whether a court may, prior to sentencing, require the upfront payment of costs as effectively occurred in this case.[4]  Hence, we accept the authority of the court to do so. That said, incarceration for the nonpayment of costs is explicitly permitted only upon a finding that the defendant is financially able to pay.  Rule of Criminal Procedure 706 specifically speaks to this question:

(A) **A court shall not commit the defendant to prison for failure to pay a fine or costs unless it appears after hearing that the defendant is financially able to pay the fine or costs**.

(B) When the court determines, after hearing, that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the court may provide for payment of the fines or costs in such installments and over such period of time as it deems to be just and practicable, taking into account the financial resources of the defendant and the nature

*(Footnote Continued)* _____

U.S. 40 (1967), the United States Supreme Court held that an indigent is entitled to a free transcript of his preliminary hearing for use at trial.  "Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution." *Id*. at 42.

Herein, Appellant was denied access to a fundamental aspect of the criminal justice system, his right to be sentenced.  Assuming that a defendant may lawfully be forced to pay costs in advance, we cannot fathom why an indigent should be imprisoned for the "privilege" of receiving a criminal sentence.

[4]  Presumably, the General Assembly included the provisions set forth in § 3815(f) to signal its intent that an offender must pay for ongoing treatment costs that continue to accrue post-sentencing, in addition to normal costs of prosecution.

of the burden its payments will impose, as set forth in paragraph (D) below.

(C) The court, in determining the amount and method of payment of a fine or costs shall, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means, including the defendant's ability to make restitution or reparations.

(D) In cases in which the court has ordered payment of a fine or costs in installments, the defendant may request a rehearing on the payment schedule when the defendant is in default of a payment or when the defendant advises the court that such default is imminent. At such hearing, the burden shall be on the defendant to prove that his or her financial condition has deteriorated to the extent that the defendant is without the means to meet the payment schedule. Thereupon the court may extend or accelerate the payment schedule or leave it unaltered, as the court finds to be just and practicable under the circumstances of record. When there has been default and the court finds the defendant is not indigent, the court may impose imprisonment as provided by law for nonpayment.

Pa.R.Crim.P. 706 (emphasis added). We note that this Rule is organized under the subdivision "Sentencing Procedures." Thus, it too does not directly control the question before us, as it applies only in the sentencing context.

However, we reiterate that it would be highly illogical to hold that a court's authority to imprison a defendant for nonpayment **after** sentencing is conditioned upon a specific inquiry into the defendant's ability to pay, yet simultaneously hold that a court may force a defendant to pay costs **before** sentencing without affording the same protections. Indeed, it would appear that the Rule speaks only to actions occurring after sentencing due to the

- 13 -

fact that costs associated with prosecution are traditionally imposed at or after sentencing. The general sentencing statute, codified at 42 Pa.C.S. § 9721, provides that "the court shall order the defendant to pay costs." 42 Pa.C.S. § 9721(c.1). **See also** 16 P.S. § 1403 ("In any case where a defendant is convicted and sentenced to pay the costs of prosecution and trial, the expenses of the district attorney in connection with such prosecution shall be considered a part of the costs of the case and be paid by the defendant."). Therefore, we agree that the trial court committed an error of law in incarcerating Appellant for his inability to pay the assessment costs.[5]

The remaining question is what relief should be granted due to this error of law. Appellant asks this Court to "afford whatever relief law, justice, and fundamental fairness required under this unique set of circumstances." Appellant's brief at 30. We would be inclined to grant some type of remedy had this issue been presented to this Court while he remained in jail. Since

_____

[5] The trial court's opinion states that it did not find Appellant's assertion of his inability to pay the $100 credible. However, we cannot accept that conclusion on this record. The trial court's only concession to the asserted inability to pay was the option "come up with a hundred bucks in a week or so, give him a break instead of sending him to jail." N.T. 10/27/15, at 4. Therefore, the court did not follow the procedures set forth by Pa.R.Crim.P. 706.

Appellant received credit for time served, we are constrained to agree with the Commonwealth that no relief can be granted.

We disagree with the Commonwealth, however, that we should not address the issue because courts are not to offer purely advisory opinions. Herein, the trial court stated in its opinion that "Allegheny County has contracts with three private providers to complete the drug and alcohol assessment . . . all of the providers require payment in advance[.]" Trial Court Opinion, 7/11/16, at 2. We cannot ignore the fact that this issue may reoccur.

Since we find that the court committed clear legal error, we wish to make plain that which is implicit in our analysis: To the extent that a trial court may require payment of costs following a guilty plea but prior to sentencing, the court shall henceforth comply with Pa.R.Crim.P. 706 before incarcerating a defendant due to an asserted inability to pay. While Rule 706 by its language applies only in the sentencing context, it is repugnant to the administration of criminal justice to hold that its protections would not extend to the defendant who has pleaded guilty but has yet to be sentenced. "This Court has long been sensitive to the treatment of indigents in our criminal justice system. Over a quarter-century ago, Justice Black declared that 'there can be no equal justice where the kind of trial a man gets depends on the amount of money he has.'" *Bearden v. Georgia*, 461 U.S. 660, 664 (1983) (quoting *Griffin v. Illinois*, 351 U.S. 12, 19 (1956)). So

too can there can be no equal justice when a defendant's right to be sentenced turns on the amount of money he has.

Finally, we address whether Appellant's sentence is illegal. The trial court claims that 75 Pa.C.S. § 3804(d) required the court to impose a maximum sentence of five years, since the assessments indicated Appellant required additional treatment. The Commonwealth agrees that this sentence is illegal.

"The matter of whether the trial court possesses the authority to impose a particular sentence is a matter of legality." *Commonwealth v. Pinko*, 811 A.2d 576, 577 (Pa.Super. 2002) (citation omitted). Furthermore, "It is well settled that this Court may address the legality of a sentence *sua sponte*." *Commonwealth v. McCamey*, 154 A.3d 352, 357 (Pa.Super. 2017) (citing *Commonwealth v. Infante*, 63 A.3d 358, 363 (Pa. Super. 2013)). We therefore address the claim.

> **(d) Extended supervision of court.--If** a person is sentenced pursuant to this chapter and, after the initial assessment required by section 3814(1), **the person is determined to be in need of additional treatment** pursuant to section 3814(2), **the judge shall impose a minimum sentence as provided by law and a maximum sentence equal to the statutorily available maximum**. A sentence to the statutorily available maximum imposed pursuant to this subsection may, in the discretion of the sentencing court, be ordered to be served in a county prison, notwithstanding the provisions of 42 Pa.C.S. § 9762 (relating to sentencing proceeding; place of confinement).

75 Pa.C.S. § 3804 (emphases added).

We do not find that this statute applies; accordingly, the trial court was not obligated to impose the statutory maximum. Read in context, § 3804(d) applies only when the trial court elects to impose a sentence of total confinement. In such cases, the trial court is required to impose a minimum sentence and maximum sentence.

> **(a) General rule.--**In imposing a sentence of total confinement the court shall at the time of sentencing specify any maximum period up to the limit authorized by law and whether the sentence shall commence in a correctional or other appropriate institution.
>
> **(b) Minimum sentence.**—
>
>> (1) The court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed.
>
> . . .

42 Pa.C.S. 9756. **See Commonwealth v. Popielarcheck**, 151 A.3d 1088, 1093 (Pa.Super. 2016) (the mandatory maximum sentence in § 3804(d) applies only where a defendant is sentenced pursuant to that chapter; sentencing court therefore not required to impose statutory maximum period of house arrest).

Thus, § 3804(d) operates to remove a court's discretion in selecting a maximum sentence when total confinement is imposed. Therefore, the statute applies only in cases where the offender is sentenced to total confinement. As our Supreme Court stated in **Taylor**, **supra**: "The purpose of imposing the statutorily available maximum sentence against such

offenders **is to extend the sentencing court's parole authority** pursuant to Section 3815 to require the offender to complete needed treatment." *Id*. at 492 (emphasis added).

In contrast, a term of county intermediate punishment does not involve parole, nor does it include a minimum and maximum sentence. When imposing county intermediate punishment, the trial court must impose a sentence of definite length.

> **(a) General rule.--**In imposing a sentence of county intermediate punishment, **the court shall specify at the time of sentencing the length of the term** for which the defendant is to be in a county intermediate punishment program established under Chapter 98 (relating to county intermediate punishment) or a combination of county intermediate punishment programs. The term may not exceed the maximum term for which the defendant could be confined and the program to which the defendant is sentenced. The court may order a defendant to serve a portion of the sentence under section 9755 (relating to sentence of partial confinement) or 9756 (relating to sentence of total confinement) and to serve a portion in a county intermediate punishment program or a combination of county intermediate punishment programs.

42 Pa.C.S. § 9763. In *Pinko*, *supra*, the appellant received a flat sentence of sixty months intermediate punishment. *Id*. at 577. He claimed that the sentence was illegal, since the court failed to impose a minimum. We disagreed, applying § 9763:

> Unlike the provisions governing partial confinement, the imposition of a minimum and maximum term is not directed with regard to an intermediate punishment sentence. . . .
>
> The court in this case, which directed Appellant to serve 60 months of intermediate punishment, complied with the

provisions governing the imposition of an intermediate punishment sentence.

*Id*. at 578.

Thus, a sentence of intermediate punishment neither permits nor requires a court to impose an indefinite range. Indeed, the trial court recognizes that it could not have imposed an indeterminate sentence of house arrest, requesting that we vacate sentence because "[Appellant] should have been sentenced **to a period of incarceration** of ninety (90) days to five (5) years[.]" Trial Court Opinion, 6/27/16, at 3 (emphasis added). Having opted to sentence Appellant to a term of house arrest, the trial court cannot now impose a period of incarceration. Therefore, we find that the instant sentence was legal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/22/2017