J-S36006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN LESLIE SANDY | : | |
| | : | |
| Appellant | : | No. 433 MDA 2024 |

Appeal from the Judgment of Sentence Entered October 24, 2023
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000526-2023

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY LAZARUS, P.J.:     **FILED: NOVEMBER 4, 2024**

Kevin Leslie Sandy appeals from the judgment of sentence, entered in the Court of Common Pleas of Lycoming County, after he entered an open guilty plea to two counts[1] of incest (F-2)[2] and was sentenced to an aggregate sentence of four to eight years' incarceration.[3] On appeal, Sandy challenges the legality and discretionary aspects of his sentence. After careful review, we affirm in part and vacate in part.

_____

[1] The counts were in relation to two different individuals, the third and fourth children Sandy and the victim had together. Those children were born in Lycoming County, in 2007 and 2009, when the victim was an adult. However, Sandy began having sexual intercourse with the victim in 2002, when the victim was a minor.

[2] 18 Pa.C.S.A. § 4302.

[3] The court entered two consecutive sentences of two to four years' imprisonment on each count.

Sandy's charges stem from sexual relations he had with the victim, his adopted daughter, that resulted in the birth of four children. The victim was fifteen years old when she moved in with Sandy and his then-wife—first as her foster family and then, later, as an adoptive family. *See* N.T. Sentencing Hearing, 10/24/23, at 9. On August 6, 2023, Sandy signed a written guilty plea colloquy to the above-stated second-degree felony charges. The colloquy listed the OGS of the offenses as a 9 and his PRS as a 4. *See* Written Guilty Plea Colloquy, 8/6/23, at 1. The colloquy listed the standard-range applicable to the offenses as 36-48 months' imprisonment (+/- 12 months), with a maximum statutory sentence of 20 years' imprisonment and a $50,000 fine. *Id.* In the written colloquy, Sandy acknowledged that he understood that "the judge is not bound by this agreement and the judge does not have to accept it." *Id.* at 2. In addition, Sandy: acknowledged that he understood the permissible range of sentences and/or fines that could be imposed; understood that the plea agreement was just a recommendation to the judge; understood that no one could tell him what the judge's sentence would actually be; acknowledged that he had thoroughly discussed all of the facts and circumstances surrounding the charges with plea counsel; and affirmed that he was satisfied with plea counsel's representation and advice. *Id.* at 2-5.

On August 16, 2023, Sandy stipulated to the factual basis of the plea and the court accepted his plea to two counts of incest.[4] *See* Order, 8/16/23.[5] In the same order, the court requested a presentence investigation report (PSI) from the probation office, as well as a risk assessment.[6] *Id.* On October 24, 2023, the court held a sentencing hearing, acknowledging that it had requested a PSI and that there had been no agreement regarding the disposition of the case. *See* N.T. Sentencing Hearing, 10/24/23, at 2. The court then sentenced Sandy to an aggregate sentence of 4-8 years' incarceration. *See* Order, 10/30/23, at 1. As part of a special condition of his supervision, the court ordered that Sandy "shall have no contact with the

---

[4] Because the victim was over the age of eighteen when the instant offenses were committed, Sandy was not obliged to register as a sexually violent predator or be assessed as such under Subchapter I of the Sexual Offenders Registration and Notification Act (SORNA II). *See* 42 Pa.C.S.A. § 9799.52.

[5] We note that there are no notes of testimony from Sandy's August 14, 2023 oral plea colloquy. *See Commonwealth v. Reed*, 971 A.2d 1216, 1219 (Pa. 2009) ("It is an appellant's duty to ensure that the certified record is complete for purposes of review."). Additionally, the Lycoming County Clerk of Courts has informed this Court that there is no transcript of such proceeding on file in his office and it also appears that a transcript has not been requested. However, the trial court's August 16, 2023 order acknowledges that "the Court . . . first inquired of [Sandy] as to his understanding of the plea and its consequences by means of a written guilty plea colloquy, which [was] to be made part of the record and which **was supplemented by an oral colloquy**[.]" Order, 8/16/23 (emphasis added). However, because Sandy only challenges the discretionary aspects and legality of his sentence, we are able to conduct appellate review of his claims without a transcript of his oral colloquy.

[6] The court noted that the risk assessment revealed that Sandy has a "below very low risk of re-offense." *See* Order, 10/30/23, at 2.

victim and/or the children of this relationship."  Sentencing Order, 10/30/23, at 2; *see also* N.T. Sentencing Hearing, 10/24/23, at 17-18.

Sandy filed a post-sentence motion to reconsider his sentence, claiming that the court's no-contact parole condition was illegal and also contending that the court did not give proper consideration to the "litany of medical issues that [he] suffers with."  Motion to Reconsider, 11/3/23, at ¶¶ 7, 10-11.  On March 1, 2024, the court granted, in part, Sandy's motion and modified its parole condition to now preclude Sandy from contacting his children with the victim until the children reach eighteen years of age.[7]  *See* Order, 3/1/24. Sandy filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  Sandy presents the following issues for our consideration:

(1) Whether the [trial] court abused its discretion when it sentenced [Sandy] to four (4) to eight (8) years in a state correctional institute because the sentencing court did not fully consider [Sandy's] physical condition at the time of sentencing.

(2) Whether the [trial] court erred by imposing an illegal sentence upon [Sandy] because it imposed a no-contact condition of parole on a sentence of incarceration that was longer than two years.

Appellant's Brief, at 7.

_____

[7] The court denied Sandy's motion in all other respects.  *See* Order, 3/1/24 ("The [c]ourt DENIES the motion to reconsider [Sandy's] aggregate sentence of 4 to 8 years' incarceration.  The [c]ourt considered all of the facts and circumstances of the case, including [Sandy's] medical issues, when the [c]ourt imposed sentences as the bottom end of the standard minimum guideline range.").

In his first issue, Sandy argues that the court abused its discretion by imposing an aggregate sentence of 4-8 years' imprisonment without fully considering mitigating factors—specifically, that he is a sixty-year-old man with congestive heart failure and COPD/sudden death syndrome, which requires the use of a nebulizer/defibrillator. *Id.* at 8.

Sandy's first issue implicates the discretionary aspects of his sentence. We will not grant relief on a discretionary sentencing claim absent a manifest abuse of discretion. *Commonwealth v. Shull*, 148 A.3d 820, 831 (Pa. Super. 2016) (citation omitted). Such an abuse exists only where the court "ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision." *Id.*

We recognize that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Id.* Specifically, an appellant must: (1) preserve the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) file a timely notice of appeal; (3) set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) raise a substantial question for our review. *Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013). The existence of a substantial question must be

determined on a case-by-case basis. *See Commonwealth v. Cruz-Centeno*, 668 A.2d 536, 545 (Pa. Super. 1995).

Instantly, Sandy raised his discretionary aspects of sentencing claim in a post-sentence motion, filed a timely notice of appeal, and included a Rule 2119(f) statement in his appellate brief. Thus, we must determine whether he has raised a substantial question for our review.

Sandy claims that the trial court "failed to fully consider [his] age and medical conditions before sentencing him[.]" Appellant's Brief, at 14. By failing to adequately acknowledge his health ailments, Sandy alleges that the court's sentence is manifestly excessive. *Id.* at 15. While a claim of inadequate consideration of mitigating factors typically does not raise a substantial question for our review, *see Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa. Super. 2013), this Court has held "that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted). Thus, we conclude that Sandy raises a substantial question and we will address the issue on its merits.

First, we note that the trial court had the benefit of a PSI prior to sentencing Sandy. "Where [a PSI] exist[s], we [] presume that the [trial court] was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A [PSI] constitutes the record and speaks for itself." *Commonwealth v.*

*Bonner*, 135 A.3d 592, 605 (Pa. Super. 2016) (citation omitted). Moreover, at sentencing, the court stated the following:

> [Sandy] does, unfortunately[,] suffer from a good number of health issues, first and foremost, congestive heart failure. He's indicated he also had sudden death syndrome, COPD. Due to these different conditions[,] there's a lengthy list of medications that he's forced to take and in addition to this he is required to use a nebulizer and defibrillator.
>
> \* \* \*
>
> Because from what little I know of your medical condition you [ha]ve . . . independently some serious conditions, but I don't know what the combined effect of that would have on anybody. So I have to be sensitive to that. Is that a consideration for me not to send you to state prison and not to give you a period of confinement? Just based upon the seriousness of this charge[,] I would say no, that I think that for the reasons that [the district attorney] so well stated[,] that a period of incarceration any less than the one that I'm giving you diminishes the seriousness of this offense.

N.T. Sentencing Hearing, 10/24/23, at 16.

As the above-quoted excerpts from the sentencing hearing indicate, the court fully considered Sandy's medical ailments when it crafted his sentence. However, even recognizing those conditions, the court felt that the import of the charges and the weighty impact that Sandy's actions had on the victim supported its standard-range sentence. As the court acknowledged, a motivating factor for not imposing a probationary sentence or lesser sentence of incarceration was the deterrent effect that this matter would have on other adoptive families. *See* N.T. Sentencing Hearing, 10/24/23, at 13-14. Under these circumstances, we conclude that the trial court did not abuse its

discretion in imposing its aggregate sentence of 4-8 years' imprisonment. **Shull**, **supra**.

In his second issue, Sandy contends that the trial court imposed an illegal sentence when it lacked the authority to impose a no-contact condition on his parole. We are constrained to agree.

Whether a trial court has the authority to impose a particular sentence is a question of legality of the sentence. **Commonwealth v. Dennis**, 164 A.3d 503, 510 (Pa. Super. 2017). When a trial court imposes a maximum sentence of imprisonment of two or more years, the Pennsylvania Board of Probation and Parole (PBPP) has exclusive authority over the terms of the defendant's parole. **See** 61 Pa.C.S.A. § 6132; **see also Commonwealth v. Coulverson**, 34 A.3d 135, 141 (Pa. Super. 2011). Thus, any condition that a sentencing court imposes on a defendant's state parole is purely advisory. **Commonwealth v. Mears**, 972 A.2d 1210, 1211 (Pa. Super. 2009).

Here, where Sandy's maximum sentence was eight years of imprisonment, the trial court lacked the statutory authority to impose a no-contact condition on his state parole. **Coulverson**, **supra**; **Mears**, **supra**. Thus, we vacate the no-contact condition of Sandy's sentence and affirm his judgment of sentence in all other respects.[8]

---

[8] The trial judge, in fact, acknowledges in her Rule 1925(a) opinion that

> [i]t would appear that the court did not have the authority to impose a condition of Sandy's sentence that his contact with the

*(Footnote Continued Next Page)*

Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.[9]

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/04/2024</u>

---

children born of this relationship be limited in any way, rendering its sentence illegal. Therefore, it would appear that the court imposed an illegal sentence with respect to imposing a parole condition.

Trial Court Opinion, 5/2/24, at 7.

[9] Because our disposition does not upset the overall sentencing scheme, we need not remand for resentencing. *See Commonwealth v. Thur*, 906 A.3d 552 (Pa. Super. 2006).