J-S44006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAHEEM PAIGE | : | |
| | : | |
| Appellant | : | No. 1769 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 20, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007575-2019

BEFORE:  LAZARUS, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:          **FILED JANUARY 23, 2026**

Raheem Paige appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after a jury convicted him of involuntary deviate sexual intercourse with child (IDSI),[1] unlawful contact with a minor,[2] endangering the welfare of a child (EWOC),[3] and related charges. In 2021, Paige was sentenced by the Honorable Anne Marie Coyle to an aggregate term of imprisonment of 25-50 years, followed by 14 years of probation.  On direct appeal, our court affirmed Paige's convictions but vacated the judgment of sentence and remanded for resentencing "due to the improper grading of Paige's EWOC charge[.]" ***Commonwealth v. Paige***,

_____

[1] 18 Pa.C.S.A. § 3123(b).

[2] ***Id.*** at § 6318(a)(1).

[3] ***Id.*** at § 4304(a)(1).

1326 EDA 2022, *8 (Pa. Super. filed Nov. 13, 2023) (unpublished memorandum decision).[4] On remand, the trial court resentenced Paige to 16-32 years of incarceration, followed by 8 years of probation. Paige now challenges the discretionary aspects of his sentence and the purported illegal conditions the trial judge imposed upon his resentencing. After careful review, we affirm.

On a prior direct appeal, our Court set forth the following facts underlying this matter:

> Paige was accused of sexually assaulting the victim, H.P.M. (born 8/2007), the daughter of his then-girlfriend, on a weekly basis over the course of three years. H.P.M. was between the ages of 9 to 11 years old at the time of the acts. H.P.M. testified that Paige would touch her on the butt and her "middle spot," i.e., vagina. N.T. Jury Trial, 9/23/21, at 44. On multiple occasions, Paige put his "middle spot," i.e., penis, in H.P.M.'s mouth and made her "go up and down" or use her hands. *Id.* at 45-47, 51-52, 55-57. H.P.M. also testified that Paige would sometimes put his fingers in her vagina and perform oral sex on her. Id. at 48. Finally, H.P.M. testified that Paige also touched her breasts. *Id.* at 44.
>
> H.P.M.'s mother testified that she and Paige had lived together since H.P.M. was four or five years old, and that H.P.M. sometimes slept on the floor in their bedroom. When H.P.M. was eleven years old, Paige reached down from the bed and touched her buttocks underneath her clothes while she was sleeping on her mother's bedroom floor. *Id.* at 58-59. H.P.M. told her mother about Paige's behavior, prompting H.P.M.'s mother to confront Paige about it and kick him out of the house, despite his denial of the

_____

[4] On direct appeal from his 2021 sentence, Paige raised issues regarding the grading of his EWOC offense, as well a discretionary aspect of sentencing claim that the sentence was excessive and unreasonable. Because our Court remanded for resentencing, we determined that "any discussion on the discretionary aspect of Paige's now-vacated sentence is moot." *See id.* at *8.

claim. *Id.* at 60. H.P.M. later disclosed to her mother that Paige "made me suck his middle part." *Id.* at 126. H.P.M. testified she never told anyone about the sexual assaults for years because she was "scared" of Paige. *Id.* at 70-71.

Mother took H.P.M. to the Children's Hospital of Philadelphia (CHOP), where medical staff performed a rape kit upon her; the kit included several swabs for male DNA. All swabs either tested negative or were inconclusive for male DNA. *Id.* at 60-63. H.P.M. was also interviewed by a forensic interviewer with the Philadelphia Children's Alliance (PCA). The court permitted the video of the PCA forensic interview to be played for the jury at trial, following the testimony of a PCA manager who authenticated the video by testifying about the agency's recordkeeping processes. *Id.* at 88-91.

Following trial, the court deferred sentencing until December 10, 2021, for the preparation of a presentence investigative report (PSI). After reviewing the PSI and a mental health evaluation, the court sentenced Paige [as described above]. The court sentenced Paige outside the guidelines on three of the six counts—EWOC, corruption of minors, and indecent assault. Paige was determined not to be a sexually volent predator, but was designated a Tier III Offender, subject to lifetime registration with the Pennsylvania State Police under Pennsylvania's Sexual Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.10-9799.75. Paige filed a post-sentence motion/motion for reconsideration raising a challenge to the weight of the evidence and, in the alternative, a claim that the sentence was "grossly disproportionate and manifestly excessive [where the court] failed to consider [Paige's] background, character[,] and rehabilitative needs pursuant to 42 Pa.C.S.[A.] § 9721." Post-Sentence Motion/Motion to Reconsider, 12/20/21, at ¶ 8.

*Paige*, *supra* at *1-*4. The post-sentence motion was denied by operation of law on April 20, 2022, and Paige filed a timely direct appeal. As noted above, on direct appeal our court affirmed Paige's convictions but vacated the judgment of sentence and remanded for resentencing "due to the improper grading of Paige's EWOC charge[.]" *Paige*, *supra*.

Following our Court's remand order, Paige filed a motion on March 12, 2024, seeking recusal of Judge Coyle for his resentencing based on "an objective appearance of bias." Motion for Recusal, 3/12/24, at 2. On April 9, 2024, the court denied the recusal motion and proceeded to resentence Paige to an aggregate sentence of 19-38 years' incarceration, followed by a 12-year probationary tail. *See* Sentencing Order, 4/9/24, at 1-2. On April 17, 2024, Paige filed a post-sentence motion claiming, among other things, that the trial court erred in denying his recusal motion; improperly incorporated comments from his prior 2021 sentencing proceeding in fashioning his new sentence; considered illegal factors in crafting its sentence; and failed to consider mitigating circumstances and his rehabilitative needs.

On May 20, 2024, the court held a hearing on Paige's post-sentence motion, stating the following on the record:

> The defendant is to receive credit for time served, calculated by the prison authorities. The defendant has not been RRRI eligible. **There is a complete stay-away order to remain in effect from the complainant and Commonwealth witnesses. That means no direct contact, no indirect contact, no third-party contact, no social-media contact, no contact whatsoever. The defendant is directed not to reside within a three-mile radius of the Commonwealth witnesses and victim at issue. The defendant is similarly prohibited from having any unsupervised contact with any minor. The defendant is barred from volunteering with, working with, coaching or administering[,] or having any contact with minors through work, religious institutions, or volunteering.** As a condition of supervision by the adult probation and parole or Pennsylvania Board of Probation and Parole, the defendant will be subjected to regular and ongoing home checks and computer-monitoring by supervising authorities for the duration of all supervision, in order to ensure the defendant is not in possession

of or in contact with any sexually explicit material or pornography in any media form.

N.T. Post-Sentence Motion Hearing, 5/20/24, at 23-24 (emphasis added); *see also* Amended Sentence, 5/20/25, at 2 (listing "Confinement Conditions" on amended sentencing form, including stay away order, 3-mile residential radius restriction, no unsupervised contact with minors, and bar from volunteering, coaching, ministering to or working with minors).

Following the hearing, the court amended its sentence and imposed a sentence of 16-32 years of incarceration, followed by 8 years of probation.[5] *See* Amended Sentencing Order, 5/20/24.[6] The court stated that it amended

_____

[5] The sentence consisted of the following terms of imprisonment: 8-16 years (Count 2 - IDSI); 8-16 years (Count 3 – unlawful contact with minor); 3-6 years (Count 4 – aggravated indecent assault with child); 2-4 years (Count 8 - EWOC); 3-6 years (Count 9 - corruption of minors by defendant age 18 or above); and 2-6 years (Count 14 – corruption of minors). Counts 2 and 3 were ordered to run consecutively; however, Count 4 was ordered to run concurrently to Counts 2 and 3 and all remaining counts were ordered to run concurrently to Count 4.

[6] While the court notes in its Rule 1925(a) opinion that it "issued a clarifying [o]rder" on May 20, 2024, Pa.R.A.P. 1925(a) Opinion, 2/3/25, at 12, it stated the following on the record at the post-sentence motion hearing:

> Trial Court: Okay. So it's 16 years to 32 plus eight years of reporting probation. So the only significant change, really, is how the counts run and that—before, I ran it consecutively to Count 4. **So now I'm running everything concurrently to Count 3.**
>
> **So actually that's a new sentence, isn't it?** Well, if I run Counts 8, 9, 14 concurrently to Count 4, then the only change, really, is to Count 4.

*(Footnote Continued Next Page)*

its sentence to "reiterate that the period of confinement that had been imposed for [the a]ggravated [i]ndecent [a]ssault with a [c]hild less than 13 [y]ears [o]ld [conviction] has been directed to run **concurrently**[,] instead of consecutively, to the period of confinement [for the u]nlawful [c]ontact with [m]inor—sexual offenses [conviction]." Trial Court Opinion, 2/3/25, at 12 (emphasis added). The court's amended sentence included the original confinement conditions it stated on the record at the May 20, 2025 post-sentence motions hearing. On May 30, 2024, Paige filed a motion for reconsideration of his amended sentence claiming that the court's "[c]onsideration of [his] alleged demeanor which involved no misconduct[,] is an improper adverse sentencing factor" under 42 Pa.C.S.A. § 9721." **See** Motion for Reconsideration, 5/30/24, at 5 (unpaginated). The court denied Paige's reconsideration motion on June 5, 2024.

Paige filed a timely notice of appeal from his amended resentence and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Paige raises the following issues for our consideration:

> (1) Did the trial court illegally impose conditions on its sentence, where any such conditions were within the exclusive

---

[ADA]: **I would agree with that.**

[Defense Attorney]: **Right.**

N.T. Post-Sentence Motion Hearing, 5/20/24, at 39 (emphasis added). Thus, the court's May 20, 2024 sentencing order was clearly more than a clarification, it actually changed the consecutive/concurrent nature of Counts 3 and 4 from its prior April 9, 2024 sentence and, thus, was a new sentence.

authority of the Department of Corrections or the Board of Probation and Parole?

(2) Did the trial court abuse its discretion by relying on improper factors in imposing sentence?

Appellant's Brief, at 3.

In his first issue, Paige contends that the trial court issued an illegal sentence by imposing specific conditions upon his state sentence that were exclusively under the purview of the Pennsylvania Board of Probation and Parole (PBPP).

The court imposed the following "Confinement Conditions" on Count 2 (IDSI) of Paige's sentence:

Other: Sexual[ly] Violent Predator Designation is waived. Defendant is Tier III Sex Offender with Lifetime Registration.

Credit for time served: Credit to be calculated by the Phila[delphia] Prison System

Other: Defendant is not Boot Camp or RRRI Eligible.

Stay Away Order: **To stay away from complainant or Commonwealth Witnesses- No Direct Contact – No Indirect Contact - No Social Media Contact for the duration of court supervision. Stay away from Victim.**

Other: **Defendant is not to reside within a 3 Mile radius of Witnesses and Victim.**

Other: **The Defendant would not be permitted to have any unsupervised contact with any minor, and the Defendant would be barred from volunteering, working with, coaching, ministering, or in any way having any contact with minors through work, attendance at religious institutions, or volunteering.**

As a condition of supervision by either the Adult Probation and Parole Department or the [PBPP], the Defendant would possibly be subjected to regular and ongoing home checks with computer monitoring by the supervising authority for the duration of

supervision in order to assure that the Defendant is not in possession of, or in contact with, any sexually explicit material or pornography in any media.

Other: While under Megan's Law Registration, the Defendant must register with the Pennsylvania State Police upon release from incarceration, upon parole from a State or County correctional facility, or upon the commencement of a sentence of Intermediate Punishment or probation.

Other: **Defendant is not to reside in home with any minors.**

Defendant is to receive sex offender evaluation and treatment and psychotherapy.

Other: Defendant is to receive Dual Diagnosis Drug and Alcohol testing and comply with any and all treatment.

Random home/vehicle checks for drugs, weapons, and pornography. No contact with drugs and weapons at home or in a vehicle. No posting illegal activity, photos of drugs/weapons/pornography on social media.

Training: Participate in Vocational Training

Other: To submit to random drug and alcohol testing - First hot urine results in violation hearing.

Other: Defendant is to do his best to maintain and obtain legitimate employment and provide proof.

Other: Intense Supervision by the Sex Offenders Unit.

Other: Conditions are to all aspects of this sentence.

Amended Sentencing Order, 5/20/25, at 2 (emphasis added).

"The matter of whether the trial court possesses the authority to impose a particular sentence is a matter of legality [of the sentence]." *Commonwealth v. Dennis*, 164 A.3d 503, 510 (Pa. Super. 2017). It is well-established that the PBPP, not trial courts, has the statutory authority to impose conditions on a state sentence and "any condition the sentencing court purport[s] to impose on [a defendant's] state parole is advisory only."

*Commonwealth v. Coulverson*, 34 A.3d 135, 141-42 (Pa. Super. 2011); *see also* 61 Pa.C.S.A. § 6134(b)(1), (2); 61 P.S. § 331.18. "Further, the authority to impose a non-contact provision as a special condition of a defendant's state incarceration rests with the Pennsylvania Department of Corrections." *Commonwealth v. Merced*, 308 A.3d 1277, 1284 (Pa. Super. 2024). *See also Commonwealth v. Mears*, 972 A.2d 1210, 1212 (Pa. Super. 2009) (judge may make recommendation to PBPP with respect to parole or terms of parole; such recommendation "shall be advisory only, and no order in respect thereto made or attempted to be made as a part of a sentence shall be binding upon the board in performing the duties and functions herein conferred upon it").

Here, the court's confinement conditions that Paige complains of are found under the heading "Recommendations of the Court" on its amended sentencing order. *See* Amended Sentencing Order, 5/20/24, at 2. "In Pennsylvania, the text of the sentencing order, and not the [oral] statements a trial court makes about a defendant's sentence, is determinative of the court's sentencing intentions and the sentence imposed." *Commonwealth v. Borrin*, 80 A.3d 1219, 1226 (Pa. 2013). Therefore, any conditions that Judge Coyle may have stated at sentencing are nothing more than recommendations as reflected on her sentencing order and, thus, do not render Paige's sentence illegal. *Dennis*, *supra*. *Cf. Mears*, *supra*; *Merced*, *supra.*

In his second issue, Paige contends that the court "tainted the sentencing process" when it improperly relied on his demeanor at trial in fashioning his sentence.[7] Motion to Reconsider Sentence, 5/30/24, at 5. Paige's claim is a challenge to the discretionary aspects of his sentence.

> Challenges to the discretionary aspects of a sentence do not entitle an appellant to review as of right. *Commonwealth v. Moury*, [] 992 A.2d 162, 170 (Pa. Super. 2010) (citing *Commonwealth v. Sierra*, [] 752 A.2d 910, 912 (Pa. Super. 2000)). Thus, before we may address the merits of such a challenge, we must first determine:
>
> > (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903;
> >
> > (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720];
> >
> > (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and
> >
> > (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006).

_____

[7] We note that Paige is limited to the discretionary aspect of sentencing claims raised in his reconsideration motion filed following the court's final, amended sentence imposed on May 20, 2025. *See Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003) (objections to discretionary aspects of sentence generally waived if they are not raised at sentencing hearing or motion to modify sentence); *see also supra* at n.6. To the extent that we were to review the denial of Paige's recusal motion, filed after our court affirmed his convictions and remanded for resentencing, we would note that he failed to seek recusal at the earliest possible moment that the claims arose on his original sentence. Rather, Paige waited until resentencing on remand. Thus, it is "time-barred and waived." *See Commonwealth v. Blount*, 207 A.3d 925, 930-31 (Pa. Super. 2019) (citation omitted). *See also* Pa.R.A.P. 2119(f).

Paige has complied with the first three requirements. We now determine whether he has raised a substantial question. A claim that a sentencing court has relied upon an impermissible factor has been found to raise a substantial question. *Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa. Super. 2011). Therefore, we will consider the merits of Paige's claim.

It is well-established that a defendant's lack of remorse is a proper sentencing factor. *Commonwealth v. Bowen*, 975 A.2d 1120, 1125 (Pa. Super. 2009). Moreover, we afford the sentencing judge great deference, "as it is in the best position to view [the] defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Fish*, 752 A.2d 921, 923 (Pa. Super. 2000). Finally, an appellate court will not disturb a trial court's sentence "unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Moury*, 992 A.2d at 169-70.

Instantly, Judge Coyle explained why she considered Paige's "intimidating" demeanor at trial when crafting his original sentence, and, notably, recognized when she resentenced him that she had "see[n] a change in him." N.T. Post-Sentence Motion Hearing, 5/20/24, at 22, 25. The court stated:

> I'm looking at him when I'm hearing people testifying. The jury was looking at him. His overall demeanor was not good. Some may say that it was intimidating.

When you're trying to evaluate someone for a sentence, the guiding force, at least in my mind, is the protection of the public, protection of the victim, protection of everyone when needed. And yes, this was a very serious case.

\* \* \*

His general demeanor was not good during his trial. The first change I saw, which is one of the reasons why I took another look at the sentencing, was the first expression of remorse from Mr. Paige at that last listing. Albeit, general in nature. I get it. Okay. But that was the first time, first time that I saw a glimmer of hope in my mind. I did take that into consideration, and I'm going to take it into further consideration today.

\* \* \*

I don't have any animus toward Mr. Paige, but I have to address his conduct whether good, bad[,] or indifferent.

\* \* \*

The way he sat there and the way he positioned himself and the way he physically reacted. There were different points in time I recall quite distinctly, and it's not something that I can palpably describe for you. But understand, I'm not the only one looking at it. The jury was looking at it. You know, how one conducts themselves in a courtroom is something observable. It's not something you can put on the record. You know, but his overall general attitude that he displayed during the trial was not helpful to him. But having said that, I do see a change in him.

\* \* \*

And sometimes people don't act well, for whatever reason. I don't know. I can't get into Mr. Paige's mind, but I do know that that was something that I considered back in the day because it was fresher in my mind.

I sat here every day, as you did, but differently so because I'm not the one engaging and asking questions[, s]o I have a little bit more ability.

But there, again, that didn't play a whole lot there except it exhibited a lack of remorse. I didn't see any remorse—that's all I'm saying—until April. I truly did not see remorse until I saw Mr. Paige at the last sentencing date. So that helped him. Okay.

*Id.* at 22-26.

It is clear from the record and the court's amended sentence that the positive change in Paige's demeanor actually benefitted Paige at his resentencing, resulting in a reduced sentence. Moreover, the court noted that in fashioning its sentence it re-reviewed Paige's PSI, his mental health evaluation, and took note of mitigating circumstances like Paige's "work history, background, social history[, and] difficulties." *Id.* at 23. *See Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted) ("[W]here the trial court is informed by a [PSI], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed.").

Acknowledging the deference we give to sentencing courts, where they are in the best position to view a defendant's character and demeanor, we do not find that Judge Coyle abused her discretion in considering Paige's demeanor when she sentenced him. *See* Trial Court Opinion, 2/3/25, at 17 (Judge Coyle stating, "[T]his defendant, like all others that come before this jurist, had been evaluated as an individual person with full comprehension of his presented unique characteristics, background[,] and rehabilitative needs."). Thus, we affirm. *Fish*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/23/2026